

U. S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

NOV 1 8 1999

NANCY DOHERTY, CLERK
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GENERAL MOTORS CORPORATION §<br>§<br>Plaintiff, §<br>§<br>vs. §<br>§<br>AMERICAN ECOLOGY §<br>ENVIRONMENTAL SERVICES CORP. §<br>f/k/a GIBRALTAR CHEMICAL §<br>RESOURCES, INC., AMERICAN §<br>ECOLOGY CORP., and MOBLEY §<br>ENVIRONMENTAL SERVICES, INC. §<br>§<br>Defendants. § | 3 - 9 9 C V 2 6 2 5 - L<br><br>CIVIL ACTION NO. _____<br><br><br>JURY DEMANDED |

## GENERAL MOTORS CORPORATION'S ORIGINAL COMPLAINT

General Motors Corporation ("General Motors") files this its Original Complaint against American Ecology Environmental Service Corporation, f/k/a Gibraltar Chemical Resources, Inc., American Ecology Corporation, and Mobley Environmental Services, Inc., (collectively "Defendants"), and for good cause shows the Court as follows:

### PARTIES

1.     Plaintiff, General Motors, is a Michigan corporation authorized to do business in the State of Texas, with its principal place of business in Detroit, Michigan.

2.     Defendant, American Ecology Environmental Service Corporation, f/k/a Gibraltar Chemical Resources, Inc. ("AEESC"), is a Texas corporation with its principal place of business in Texas.  AEESC may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201.

3.     Defendant, American Ecology Corporation ("AEC"), is a Delaware corporation authorized to do business in Texas, with its principal place of business in Idaho. AEC may be served with process through its registered agent, C.T. Corporation Systems, 350 N. St. Paul, Dallas, Texas 75201.

4.     Defendant, Mobley Environmental Services, Inc. ("Mobley"), is a Delaware corporation with its principal place of business in Texas. Mobley may be served with process through its registered agent, Chad Gormon, Route 11, Box 454-H, Longview, Texas 75603.

## JURISDICTION

5.     This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00 and because the matter is between citizens of different states.

## VENUE

6.     Venue is proper in the Northern District of Texas, Dallas Division pursuant to 28 U.S.C. § 1391(a) in that the Northern District of Texas is a district wherein General Motors incurred all of its damages and wherein a substantial part of the negotiations that ultimately resulted in the Defendants' failure to defend and indemnify General Motors took place. Thus, a substantial part of the events or omissions giving rise to this claim occurred in the Northern District of Texas. Venue also is proper in this District because Defendants are subject to personal jurisdiction here. See 28 U.S.C. § 1391(a)(1) and (c).

## FACTS

7.     Defendants have owned, operated, and/or managed a licensed hazardous waste facility in Winona, Texas (the "Facility"). Beginning in the 1980's, Defendants contracted with a variety of companies to properly dispose of the hazardous wastes these companies generated. In 1989, General

**GENERAL MOTORS CORPORATION'S ORIGINAL COMPLAINT - 2 -**

Motors contracted with Defendants to dispose of industrial wastes, including hazardous wastes. In contracting with General Motors, Defendants not only assured General Motors that they would dispose of its waste safely and legally, they also agreed to indemnify General Motors should General Motors ever suffer any loss due to Defendants' actions. These commitments are contained in Corporate Purchase Agreement No. 3837 dated September 20, 1989, between General Motors Corporation and Gibraltar Chemical Resources, Inc., (the "Agreement"), and the Continuing Guaranty dated July 16, 1993, executed by Mobley Environmental Services, Inc., in favor of General Motors Corporation, (the "Guaranty").[1]

8.     In the Agreement, Gibraltar agreed to perform services for General Motors consisting of the transportation and disposal of hazardous and non-hazardous by-products. Gibraltar agreed, among other things, to:

(1) comply with all federal regulations regarding hazardous material transportation and use care and protection in transporting Byproducts[2];

(2) take appropriate and immediate action in the event of an incident or release involving Byproducts to protect human health and the environment in accordance with regulations and applicable law[3];

(3) appropriately notify governmental authorities of incidents and releases involving Byproducts[4];

(4) immediately notify General Motors and the appropriate General Motors Business Unit of any incident, release or detainment involving Byproducts[5];

---

[1] On December 31, 1994, AEC purchased 100% of the stock of Gibraltar Chemical Resources, Inc. ("Gibraltar") and changed Gibraltar's name to American Ecology Environmental Services Corporation. Through the stock purchase, AEC became therefore liable for all of Gibraltar's liabilities.

[2] Agreement, at ¶ 2.3a.4.

[3] Id. at ¶ 2.3a.5.

[4] Id. at ¶ 2.3a.6.

[5] Id. at ¶ 2.3a.7.

**GENERAL MOTORS CORPORATION'S ORIGINAL COMPLAINT - 3 -**

(5) comply with all requirements of federal, state and local laws, rules, regulations and orders[6];

(6) indemnify, defend and hold General Motors (including its officers, directors, employees, sub-contractors and agents) harmless from and against all liabilities, damages, fines, penalties, costs, claims, demands and expenses (including costs of defense, settlement and reasonable attorney's fees) of whatever type or nature resulting from failure of Contractor or Facilities, their agents, employees or subcontractors, to comply with the Corporate Purchase Agreement or any federal, state, or local law, statute, regulation, rule, ordinance or government directive which may directly or indirectly regulate or affect obligations of Contractor and Facilities hereunder or resulting from damage to, or destruction of, any property (including property of General Motors or its sub-contractors) or injury (including death) to any person arising out of or attributable to any act or omission by Contractor or Facilities, their agent, employees or subcontractors in performance of the Corporate Purchase Agreement[7]; and

These same obligations were assumed by AEC when it became the Contractor under the Agreement.

9.      On August 30, 1996, General Motors was joined in a lawsuit in state court in Tarrant County, Texas, in Cause No. 236-165224-96, styled *Virgie Adams and Charles Adams, et al v. American Ecology Environmental Services Corporation, et al* ("the Litigation"), to which the Defendants were already parties.  The Litigation plaintiffs--local residents-- accuse Defendants of various acts and omissions in connection with the handling and disposal of wastes at Defendants' Winona, Texas, Facility.    These allegations, if true, are also violations of the Agreement. Additionally, the Litigation plaintiffs allege that the Defendants' customers, including General Motors, were both directly and vicariously liable due to Defendants' transportation and disposal of hazardous waste and byproducts from the customers' facilities.

10.     On May 3, 1999, General Motors presented Defendants with a detailed claim notice spelling out its entitlement to defense and indemnity in the Litigation under the terms of the

---

[6] Id. at ¶ 3.1b.

[7] Id. at ¶ 5.1.

**GENERAL MOTORS CORPORATION'S ORIGINAL COMPLAINT - 4 -**

Agreement and the Guaranty. General Motors also notified the Defendants through subsequent correspondence of a reasonable settlement offer from the plaintiffs in the Litigation for an amount which two other similarly situated customers of Defendants had already accepted. On June 29, 1999, General Motors received a two-sentence, blanket denial of its request for defense and indemnity. The only explanation offered for declining General Motor's demand was the presence of the direct negligence claims against General Motors.

11.     In denying General Motors' request for defense and indemnity, Defendants ignored the general tenor and specific claims in the latest petition in the Litigation. In particular, the Plaintiffs' Third Amended Petition includes the following allegation: ". . . the Generators are liable **directly or vicariously** for their own negligence **and that of Gibraltar**." The Plaintiffs' Third Amended Petition in the Litigation makes clear that it is the Defendants' alleged negligence and apparent violations of law -- *and not General Motors'* -- that are at the core of the plaintiffs' complaints. Over one hundred pages of the Petition are dedicated to detailing numerous allegations of negligent acts or omissions of the Defendants, while the charges against General Motors and the Facility's customers are set forth in about four pages. Despite this live pleading and the facts giving rise to it, Defendants have refused to assume the defense of and to indemnify General Motors pursuant to the Agreement and Guaranty.

12.     With a theory of vicarious liability pleaded against General Motors for Defendants' negligence, General Motors is clearly owed a defense and indemnity by Gibraltar, its successors and guarantors. Even the allegations of direct negligence against General Motors are clearly secondary to, derivative of and dependent upon those made against Defendants, and call for indemnity by Defendants. General Motors is charged with *"negligently hiring"* the Defendants and *"negligently entrusting"* the Defendants with its waste. Consequently, an adverse judgment against General Motors is dependent upon a primary finding that the Defendants' acts or omissions have injured the

**GENERAL MOTORS CORPORATION'S ORIGINAL COMPLAINT - 5 -**

plaintiffs in the Litigation. *But for* the Defendants' incipient acts or omissions, General Motors would have absolutely no exposure in the Litigation.[8]

13.     Based upon Defendants' curt refusal to undertake a defense and indemnity, and to mitigate the further expenditure of attorneys' fees and costs, General Motors accepted the plaintiffs' reasonable settlement offer of $1.5 million (plus guardian *ad litem* fees in an amount as yet to be determined) on July 28, 1999. After careful investigation of the circumstances, General Motors determined that it faced liability as a result of Defendants' acts and omissions in an amount greater than the amount for which it settled the Lawsuit. Accordingly, General Motors, acting in good faith, entered into a settlement agreement with the plaintiffs therein in full and final satisfaction of all claims. General Motors will show that the settlement was reasonable and prudent under the circumstances.

## COUNT ONE: BREACH OF CONTRACT

14.     Defendants actions as described herein above and incorporated herein by reference constitute breach of contract. The Agreement and Guaranty obligate Defendants to:

> (6) indemnify, defend and hold General Motors (including its officers, directors, employees, sub-contractors and agents) harmless from and against all liabilities, damages, fines, penalties, costs, claims, demands and expenses (including costs of defense, settlement and reasonable attorney's fees) of whatever type or nature resulting from failure of Contractor or Facilities, their agents, employees or subcontractors, to comply with the Corporate Purchase Agreement or any federal, state, or local law, statute, regulation, rule, ordinance or government directive which may directly or indirectly regulate or affect obligations of Contractor and Facilities hereunder or resulting from damage to, or destruction of, any property (including property of General Motors or its sub-contractors) or injury (including death) to any person arising out of or attributable to any act or omission by Contractor or Facilities,

---

[8] The derivative negligence allegation against General Motors does not excuse Defendants from their contractual obligation to indemnify, defend and hold General Motors harmless for claims "resulting from a failure of Contractor or Facilities . . . to comply with this Agreement, or any federal, state or local law, statute, regulation, rule, ordinance, or government directive which may directly or indirectly regulate or affect obligations of Contractor and Facilities hereunder or resulting from damage to, ore destruction of, any property . . . or injury (including death) to any person arising out of or attributable to any act or omission by Contractor of Facilities . . . ." In fact, the exception clause of the indemnity dealing with General Motor's own negligence excuses Defendants from their obligation only " . . . **to the extent** such liability, damage, fine or expense is **the result of** negligent GM acts or omissions." Agreement, ¶ 5.1 (emphasis added).

**GENERAL MOTORS CORPORATION'S ORIGINAL COMPLAINT - 6 -**

their agent, employees or subcontractors in performance of the Corporate Purchase Agreement.

Agreement, at ¶ 5.1.

15. Plaintiffs have denied a request for indemnification under the Agreement and Guaranty, in breach of the clear terms of such agreements. General Motors further alleges that all conditions precedent to Defendants' promise to defend and indemnify have occurred. As a result of Defendants' breach, General Motors has suffered damages in excess of the minimal jurisdictional requirements of this Court.

16. Defendants breached other obligations set forth in the Agreement, which proximately resulted in damages to General Motors. Defendants further breached their obligation and representation that they would comply with all federal, state or local laws, rules, regulations or orders; take appropriate and immediate action in the event of an incident or release; appropriately notify governmental authorities of incidents and releases; and immediately notify General Motors of any incident or release involving General Motors' waste. These acts and omissions proximately resulted in damage to General Motors in an amount in excess of the jurisdictional limits of this Court.

## COUNT TWO: CONTRIBUTION

17. By reason of the facts set forth herein above, which are incorporated herein by reference, General Motors is entitled, in accordance with Chapters 32 and/or 33 of the Texas Civil Practice and Remedies Code, to contribution from Defendants. But for Defendants' wrongful acts and omissions, General Motors would not have been sued by plaintiffs in the Litigation. As a result of these breaches of the duty of care and the terms of the Agreement, Defendants are responsible for all or part of the damages allegedly suffered by plaintiffs in the Litigation. General Motors is entitled to contribution from Defendants according to the percentage of responsibility attributable to

Defendants for the damages plaintiffs in the Litigation recovered through settlement from General Motors, which General Motors alleges is one hundred percent (100%).

### COUNT THREE: INDEMNITY

18.    The facts as described herein above, which are incorporated herein by reference, entitle General Motors to indemnity for all sums which General Motors was compelled to pay to plaintiffs in the Litigation.   General Motors denies that it was guilty of any negligence which caused or contributed to the harm alleged by plaintiffs in the Litigation.  Instead, General Motors' involvement in the Litigation was based solely on liability derivative of Defendants' own negligence.  Therefore, General Motors is entitled to judgment against Defendants for indemnity for the full amount of the good faith settlement paid to plaintiffs in the Litigation.

### COUNT FOUR: ATTORNEYS' FEES

19.    General Motors has engaged the undersigned attorneys in connection with this action and has agreed to pay reasonable fees for such legal services.  Accordingly, General Motors seeks to recover attorneys' fees as permitted under the Agreement, Guaranty and Texas Civil Practice and Remedies Code § 38.001.

### DEMAND FOR JURY TRIAL

20.    General Motors, as provided by Rule 38 of the Federal Rules of Civil Procedure, hereby demands a trial by jury on all issues.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, General Motors requests that American Ecology Environmental Service Corporation, f/k/a Gibraltar Chemical Resources, Inc., American Ecology Corporation, and Mobley Environmental Services, Inc., be cited to appear and answer herein and that upon final trial hereof, that General Motors recover its actual damages; its costs; expert

witness and attorneys' fees; pre- and post-judgment interest; and such other and further relief, at law or in equity, to which it may show itself justly entitled.

Dated: November 18, 1999

Respectfully submitted,

KIRK F. SNIFF
State Bar No. 18797800
**KAREN BROWN WILLCUTTS**
State Bar No. 03149740
**ASHLEY T. KISNER**
State Bar No. 00791783
**STRASBURGER & PRICE, L.L.P.**
901 Main Street, Suite 4300
Dallas, Texas 75202
(214) 651-4300
(214) 651-4330 (Telecopier)

**ATTORNEYS FOR DEFENDANT
GENERAL MOTORS CORPORATION**