

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 3 0 2001

CLERK, U.S. DISTRICT COURT
By _____
Deposit

GENERAL MOTORS CORPORATION, §
§
Plaintiff, §
§
v. § Civil Action No. 3: 99-CV-2625-L
§
AMERICAN ECOLOGY §
ENVIRONMENTAL SERVICES CORP., §
et al., §
§
Defendants. §

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff's Motion for Summary Judgment, filed October 20, 2000;

Defendants' Counter-Motion for Summary Judgment, filed December 11, 2000; Defendants'

Unopposed Motion for Leave to Have the Court Consider Defendants' Reply to Plaintiffs' [sic]

Response to Defendants' Counter-Motion for Summary Judgment as Defendants' Sur-Reply to

General Motors' Motion for Summary Judgment ("Defendants' Motion for Leave), filed March 16,

2001; and the parties' Joint Motion to Reconsider Plaintiff's Motion to Determine Applicable Law,

filed June 25, 2001.[1] After careful consideration of the motions, responses, replies, briefs, summary

judgment evidence, and the applicable authority, the court **denies as moot** Defendants' Motion for

---

[1] The court is in receipt of a letter dated July 19, 2001 from Mr. R. Brian Craft, counsel for Defendants, which the clerk is hereby directed to file along with this order. In that letter, which was copied to counsel for Plaintiff, Mr. Craft states that the parties have agreed that the contract at issue, Corporate Purchase Agreement No. 3837, dated September 20, 1989 (the "Agreement"), should be construed according to the laws of the State of Michigan, and that all other issues should be determined according to the laws of the State of Texas. In light of the parties' agreement, their Joint Motion to Reconsider Plaintiff's Motion to Determine Applicable Law will be denied as moot.

**Memorandum Opinion and Order - Page 1**

Leave,[2] **denies as moot** the parties' Joint Motion to Reconsider Plaintiff's Motion to Determine

Applicable Law, **grants in part** and **denies in part** Plaintiff's Motion for Summary Judgment, and

**denies** Defendant's Counter-Motion for Summary Judgment.

## I.    Factual and Procedural Background

This is a breach of contract case.   Plaintiff General Motors Corporation ("GM") is a

Michigan corporation with its principal place of business in Detroit, Michigan. Defendant American

Ecology Environmental Service Corporation ("AEESC"), formally known as Gibraltar Chemical

Resources, Inc. ("Gibraltar"), is a Texas corporation, and wholly owned subsidiary of Defendant

American Ecology Corporation, with its principal place of business in Texas.   American Ecology

Corporation ("AEC") is a Delaware Corporation with its principal place of business in Idaho.

Defendant Mobley Environmental Services, Inc. is a Delaware Corporation with its principal place

of business in Texas.[3]   The following facts are undisputed.

---

[2]Once a motion is filed, the Local Civil Rules permit a response by the nonmovant and a reply by the movant. *See* Local Civil Rule 7.1. Thus, in motion practice for this district the movant is normally entitled to file the last pleading, as it should be.  Surreplies are highly disfavored by the court because they are usually an attempt by one side to get the last word on an issue, rather than a means to bring new or supplemental authority to the attention of the court. Accordingly, the court will permit surreplies only where truly exceptional or extraordinary circumstances exist.  In this case, while Defendants do not seek leave to *file* a surreply, they request that the reply brief filed in connection with their summary judgment motion also be considered in ruling on Plaintiff's summary judgment motion.  When parties submit cross motions for summary judgment which largely address the same issues, judicial economy is served by considering the arguments from both motions (and related responses and replies) together.  After examining the cross motions for summary judgment, the court concludes that there is a substantial overlap of issues, and therefore will consider the cross motions jointly.  Defendants' request will therefore be denied as moot.

[3]Defendant Mobley has since been dismissed from this lawsuit. *See* court's order dated July 11, 2001. The court will refer to AEESC and AEC collectively as "American Ecology" or "Defendants," unless otherwise stated.

Between January 1982 and March 1997, American Ecology owned and operated a hazardous waste management facility located in Winona, Texas. In September 1989, GM hired Gibraltar, AEESC's predecessor, as an independent contractor to perform services for GM consisting of the transportation and disposal of hazardous and nonhazardous waste and byproducts. The Agreement between GM and Gibraltar, included, *inter alia*, mutual indemnity provisions. Under Section 5.1 of the Agreement, Gibraltar agreed to indemnify, defend and hold GM harmless from and against

> any and all liabilities, damages . . . costs, claims, demands and expenses (including costs of defense, settlement, and reasonable attorney's fees) of whatever type or nature resulting from failure of [Gibraltar] . . . to comply with this Agreement or any federal, state or local law, statute, regulation, rule, ordinance, or government directive which may directly or indirectly regulate or affect obligations of [Gibraltar] hereunder, or resulting from damage to, or destruction of, any property . . . or injury (including death) to any person arising out of or attributable to any act or omission by [Gibraltar] in performance of this Agreement, except to the extent such liability, damage, fine or expense is the result of negligent GM acts or omissions.

Under Section 5.2, GM agreed to indemnity, defend and hold Gibraltar harmless from and against

> any and all liabilities, damages . . . , costs, claims, demands and expenses (including costs of defense, settlement, and reasonable attorney's fees) of whatever type or nature resulting from failure of GM . . . to comply with this [A]greement or any federal, state or local law, statute, regulation, rule, ordinance, or government directive which may directly or indirectly regulate or affect obligations of GM hereunder, or resulting from damage to, or destruction of, any property of [Gibraltar] and Facilities or injury (including death) to any person arising out of or attributable to any negligent act or omission by GM . . . in performance of this Agreement, except to the extent such liability, damage, fine or expense is the result of [Gibraltar] or Facility negligent acts or omissions.

The Agreement also required Gibraltar to maintain certain minimum insurance, including pollution legal liability coverage, and to name GM as an "additional insured" under such insurance policy.[4]

---

[4]On September 29, 1995, AEC informed GM that it had acquired ownership of Gibraltar, and that it had changed Gibraltar's name to American Ecology Environmental Services Corporation. On November 27, 1995, the Agreement was formally amended to reflect this acquisition. There is no dispute that, as a result of this acquisition, AEC assumed Gibraltar's contractual obligations under the Agreement. In this

On August 30, 1996, GM was joined in a lawsuit styled *Virgie Adams and Charles Adams v. American Ecology Environmental Services Corporation*, Cause No. 236-165224-96, in the 236th Judicial District Court in Tarrant County, Texas. This toxic tort action was brought by several hundred plaintiffs against numerous defendants, including the parties in the instant lawsuit. In *Adams*, the plaintiffs alleged, *inter alia*, that American Ecology improperly managed and disposed of hazardous and toxic substances at the Winona facility in violation of Texas health, safety and environmental requirements and standards. Specifically, the plaintiffs alleged that American Ecology was responsible for a series of spills, releases, fires, explosions and emissions at the Winona facility, that such discharges resulted in the release of hazardous and toxic substances into the surrounding environment, and that the plaintiffs suffered bodily injury and property damage as a result of American Ecology's negligent operation of the Winona facility. In addition, the plaintiffs contended that GM, as one of American Ecology's customers, was both directly liable based on its own acts of negligence and vicariously liable based on American Ecology's negligent transportation and disposal of GM's hazardous waste and byproducts.

On May 3, 1999, GM demanded that American Ecology provide it (GM) full and complete indemnity, including a defense in the *Adams* suit, in accordance with the terms of the Agreement. On June 29, 1999, American Ecology denied GM's request for defense and indemnity. Thereafter, GM sent American Ecology two more letters, on June 30, 1999 and July 12, 1999, requesting that it defend and indemnify GM in *Adams* pursuant to the terms of the Agreement. American Ecology

---

opinion, the court makes no distinction between AEC, AEESC and Gibraltar with respect to contractual obligations under the Agreement. As such, references to American Ecology are intended to encompass Gibraltar and all acts attributable to that entity.

**Memorandum Opinion and Order - Page 4**

did not respond to those letters.  Subsequently, on July 28, 1999, GM settled the *Adams* case in the amount of $1,500,000.

On November 18, 1999, GM filed the instant lawsuit against American Ecology, asserting causes of action for breach of contract, contribution, indemnity, and attorney's fees.  GM now moves for summary judgment on its claim for breach of contract, and American Ecology has filed a cross-motion for summary judgment on that same claim.[5]

## II.    Plaintiff's Motion and Defendants' Counter-Motion for Summary Judgment

### A.    Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a

---

[5]GM no longer desires to pursue its claim for common law contribution against Defendants. *See* Br. in Supp. of GM's Resp. to Defs.' Counter-Mot. for Summ. J. at 15 n.4.  The court will therefore consider the claim abandoned.  Regarding its remaining claim for common law indemnity, GM states that this claim is cumulative, and made in the alternative to its breach of contract claim. *See* GM's Mot. for Summ. J. at 1 n.1.  Thus, GM's summary judgment is intended to resolve all claims in the litigation.  American Ecology, on the other hand, concedes that it does not move for summary disposition of GM's claims for common law indemnity or attorneys' fees.  Therefore, although not styled as such, American Ecology's motion is in effect a motion for partial summary judgment.  In any event, the court resolves the parties' respective motions based on GM's breach of contract claim, and therefore GM's claim for common law indemnity will be denied as moot.  Finally, because the content of the parties' submissions overlaps, the court will consider the arguments in Plaintiff's Motion for Summary Judgment and Defendants' Counter-Motion for Summary Judgment jointly.

**Memorandum Opinion and Order - Page 5**

motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id., see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

## B.     Analysis

As noted above, GM has moved for summary judgment on its breach of contract claim.   If the movant bears the burden of proof on an issue, it must establish beyond peradventure all of the essential elements of the claim to warrant judgment in its favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).    To prevail on its claim, GM must establish that 1) a contractual indemnity agreement existed between GM and American Ecology; 2) the agreement obligated American Ecology to indemnify GM in the event claims covered by the Agreement were made against it; 3) claims covered by the Agreement were made against GM;  4) all conditions precedent for recovery had occurred, been performed, waived, or excused; and 5) GM was damaged. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995)(citing Texas law). The court need only address the third element, as it is the only one in dispute.

GM contends that American Ecology breached the Agreement in three respects: 1) by failing to defend claims asserted against it (GM) in the *Adams* litigation; 2) by failing to indemnify costs and expenses incurred by it (GM) in defending the *Adams* litigation; and 3) by failing to name it (GM) as an additional insured on its insurance policies.  American Ecology responds that it had no duty to indemnify or defend GM in the underlying lawsuit because the plaintiffs in *Adams* alleged independent acts of negligence against GM, which are excluded under the Agreement.  American Ecology also contends that it complied with its contractual obligation to secure insurance coverage. Therefore, American Ecology maintains that it is entitled to judgment as a matter of law on Plaintiff's claim.  Before determining whether American Ecology breached any alleged duties, the court must first ascertain the scope of the Agreement's indemnification clause.

## 1.    Construction of the Agreement

Under Michigan law, where the language of a contract is unambiguous, the court construes

it as a matter of law. *See Taggart v. United States*, 880 F.2d 867, 870 (6th Cir. 1989).   While

Michigan courts construe indemnity contracts most strictly against the party who is the indemnitee

(in this case, GM), *MSI Constr. Managers, Inc. v. Corvo Iron Works, Inc.*, 527 N.W.2d 79, 81 (Mich.

Ct. App. 1995), they should also be construed to effectuate the intent of the parties. *See id.*; *Sherman*

*v. DeMaria Bldg. Co., Inc.*, 513 N.W.2d 187, 190 (Mich. Ct. App. 1994).     In ascertaining the

intention of the parties, the court considers the language used in the contract as well as the situation

of the parties and circumstances surrounding the contract. *Title Guaranty & Surety Co. v. Roehm*,

184 N.W. 414, 416 (Mich. 1921); *Corvo Iron Works, Inc.*, 527 N.W.2d at 81; *Sherman*, 513 N.W.2d

at 190.   Language in a contract that is clear and unambiguous must be construed according to the

plain and ordinary meaning of its terms. *Equitable Life Assurance Soc'y of U.S. v. Poe*, 143 F.3d

1013, 1016 (6th Cir. 1998); *Royce v. Citizens Ins. Co.*, 557 N.W.2d 144, 147 (Mich. Ct. App. 1996).

Finally, the court should examine an indemnity clause in such a way as to give a reasonable meaning

to all of its provisions. *Corvo Iron Works*, 527 N.W.2d at 81.

There is no real dispute that the Agreement, by its express terms, envisioned that: 1)

American Ecology would indemnify, defend and hold GM harmless against those claims resulting

solely from American Ecology's acts or omissions; and 2) American Ecology would *not* indemnify,

defend and hold GM harmless against those claims resulting from GM's acts or omissions.   The

dispute relates to "mixed claims," that is, those which charge GM with both direct liability (for its

own acts and omissions) and vicarious liability (for Gibraltar's acts or omissions).   American

Ecology contends that the exclusionary phrase in section 5.1 of the Agreement (beginning with the

Memorandum Opinion and Order - Page 8

words "except to the extent . . ." and ending with the words "negligent GM acts or omissions.")

quoted above, should be interpreted to limit GM's right to indemnity to claims based *entirely* on acts

of Gibraltar.  In other words, American Ecology asserts that it has no duty to defend and indemnify

a "mixed claim."  American Ecology, however, cites no authority to support its contention that a

"mixed" pleading (that is, a pleading that contains some causes of action that are covered by an

indemnity provision and others which are not) voids an indemnitor's duty to indemnify and duty to

defend under the contract.  The court is unable to conclude that the language in the Agreement's

indemnification clause is as limiting, or as exclusive, as American Ecology suggests.

The indemnification clause clearly states that Gibraltar agrees to "hold GM . . . harmless

from and against *any and all* liabilities, damages, costs, claims, demands and expenses . . . *of*

*whatever type or nature* resulting from the failure of [Gibraltar] . . . to comply with this Agreement

. . ., or resulting from . . . any injury . . . to any person arising out of or attributable to any act or

omission by [Gibraltar]." (emphasis added).  Since the Agreement expressly excludes from coverage

claims resulting from GM's negligent acts or omissions, the reasonable interpretation of the contract

is that the parties intended for all other claims to be included within the coverage.  Indeed, when the

exclusionary phrase is read in conjunction with the other provisions of the Agreement, it is clear that

the parties intended that GM be indemnified against "*any and all*" liability caused by, derived from,

or based on, Gibraltar's negligent or intentional acts or omissions.  There can be no broader

classification than the word "all," which "[i]n 'its ordinary and natural meaning . . . leaves no room

for exceptions.'"  *Pritts v. J.I. Case Co.*, 310 N.W.2d 261, 265 (Mich. Ct. App. 1981)(citation

omitted).  Thus, while American Ecology would have no duty to indemnify or defend GM for GM's

acts of negligence, it would not be absolved of its duty to indemnify and defend against claims based

on Gibraltar's negligent acts or omissions.  Based on the language of both indemnity provisions, the reasonable interpretation of the Agreement is that the parties intended to assume liability only for their own negligent acts or omissions, and not the negligent acts or omissions of the other.  Since under a theory of vicarious liability one may be held liable, based on the relationship between the parties, for the negligent acts of another, and because the Agreement expressly states that the parties are not to be held liable for the negligent acts of the other, the court concludes that the parties intended the indemnity clause to protect against claims for vicarious liability.[6]

The court finds that the Agreement's indemnity provision is not reasonably and fairly susceptible to multiple meanings or understandings, and that the reasonable construction of the Agreement is the parties intended for American Ecology to indemnify and defend GM against vicarious liability resulting from American Ecology's negligent acts or omissions.  Accordingly, there is no genuine issue of material fact on the construction of the indemnification provision.[7]

---

[6]American Ecology contends that the "express negligence rule" applies in this case.  It does not. *See* *Sherman*, 513 N.W.2d at 190 ("Michigan courts have discarded the additional rule of construction that indemnity contracts will not be construed to provide indemnification for the indemnitee's own negligence unless such intent is expressed clearly and unequivocally in the contract.").  In any event, GM does not seek a defense or indemnification for its own negligent acts or omissions.  As the court has already determined that the Agreement does not cover GM's negligent acts or omissions, American Ecology's argument concerning the applicability of the express negligence rule is a red herring designed to confuse the nature of the controversy.

[7]In *Adams*, the plaintiffs asserted claims against GM for negligent entrustment and negligent hiring.  GM contends that these claims are derivative of Gibraltar's negligent and/or intentional acts or omissions, and that under Michigan law, they are treated the same as claims for vicarious liability when determining an indemnitor's duty to defend under an indemnity agreement.  As the court has determined that American Ecology had a duty to defend GM against vicarious liability claims, it does not determine whether negligent entrustment and negligent hiring are derivative claims, or whether such claims triggered American Ecology's duty to defend.

**Memorandum Opinion and Order - Page 10**

2.     **American Ecology's Obligations under the Agreement**

a.     **The Duty to Defend**

The court next addresses whether American Ecology had a duty to defend GM against claims asserted in *Adams*. The Agreement sets forth the conditions under which American Ecology's duty to defend will arise. As noted above, American Ecology had a duty to defend GM against any and all claims resulting from, *inter alia*, "injury . . . to any person arising out of or attributable to any act or omission by [Gibraltar]." In determining the duty to defend, GM contends that general principles of insurance law should apply, and relies on *Turner Constr. Co. v. Robert Carter Corp.*, 162 F.3d 1162 (Table)(No. 97-1394, 1998 WL 553009 (6th Cir. Aug. 17, 1998)), to support this contention. Although *Turner* was not a summary judgment case, and did not specifically address whether general principles of insurance law should apply to indemnity contracts, the court nevertheless finds the case instructive in determining this issue. In *Turner*, a general contractor and subcontractor entered into a written contract, which included a boilerplate indemnification clause. The indemnification clause provided that the subcontractor would defend and indemnify the general contractor against damages or injury to any person resulting from, arising out of or occurring in connection with the subcontractor's installation of plumbing, HVAC and subsurface drainage at a specific work site. The general contractor brought a lawsuit against the subcontractor for, *inter alia*, breach of contract based on the subcontractor's alleged failure to defend the general contractor in an underlying lawsuit brought by a third party against the general contractor. The issue before the court was whether the facts in the underlying case fell within the terms of the contract such as to engage the subcontractor's duty to defend and indemnify the general contractor. In considering whether the subcontractor had a duty to defend and indemnify, the court relied on general principles of insurance law. American

Memorandum Opinion and Order - Page 11

Ecology, however, contends that *Turner* is inapposite, as application of general insurance principles here would conflict with the Michigan canon of construction that indemnity contracts are to be construed most strictly against the indemnitee. American Ecology contends that the court should instead determine whether any obligation arose under the Agreement based solely on the language of the Agreement. The court disagrees.

Just as an insurance company's duty to defend arises from the language of an insurance contract, *Stockdale v. Jamison*, 330 N.W.2d 389, 392 (Mich. 1982), American Ecology's duty to defend in this case arises from the language in the Agreement. In addition, an insurer's duty to defend an insured is measured by the allegations in a plaintiff's pleadings. *Guerdon Indus., Inc. v. Fidelity & Casualty Co. of New York*, 123 N.W.2d 143, 147 (Mich. 1963). The court sees no reason why these same principles should not apply in the context of an indemnitor's duty to defend under an indemnity contract.

As previously noted, the court determines whether a duty to defend arose based on the factual allegations asserted in the underlying pleadings. *See United States Fidelity & Guaranty Co. v. Citizens Ins. Co. of Am.*, 506 N.W.2d 527, 529 (Mich. Ct. App. 1993). The duty to defend, however, cannot be limited by the precise language of the pleadings. *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1980). Rather, the court must look at the cause of the alleged injury to ascertain whether it is within the scope of the contract provisions, and scrutinize the substance rather than the form of the allegations in the complaint. *United States Federal & Guaranty*, 506 N.W.2d at 529. Typically, an insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are *any* theories of recovery that fall within the provisions of the insurance policy. *Detroit Edison Co.*, 301 N.W.2d

Memorandum Opinion and Order - Page 12

at 835. Thus, "[i]f the allegations by a third party against one owed duties of defense and indemnity are 'even arguably' applicable, the promisor must provide a defense." *American Bumper and Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996).

Under Michigan law, the duty to defend arises as soon as the pleadings or other facts known by the insurer bring the action within the policy coverage. *See Celina Mut. Ins. Co. v. Citizens Ins. Co.*, 349 N.W.2d 547, 551 (Mich. Ct. App. 1984). Here, there is no dispute that the Third Amended Petition in the *Adams* litigation is the operative pleading. Having read the factual allegations asserted in the Third Amended Petition, the court concludes that they are sufficient to trigger American Ecology's duty to defend under the Agreement. The petition alleged that Gibraltar failed to manage highly toxic, hazardous wastes, substances and materials in a manner that complied with Texas health, safety and environmental statutes, regulations, rules, policies and common law, and that the plaintiffs suffered damages as a proximate result. GM's App. to Summ. J. Mot. at 271. The petition further alleged that the "Generator Defendants," including GM, were vicariously liable for Gibraltar's negligence under theories of agency and *respondeat superior*. *Id.* at 384. The petition also alleged that the Generator Defendants were liable for Gibraltar's conduct regarding its waste and hazardous substances and any mixture or blend of that waste or hazardous substance with another generator's waste or hazardous substances, and liable for all of Gibraltar's remaining conduct. *Id.* at 387. The petition also alleged that each Generator Defendant failed to properly supervise or manage Gibraltar in handling and management of its hazardous waste which, according to the plaintiffs, rendered the Generator Defendants liable for damages caused by American Ecology's negligence and other fault under Texas law. *Id.* at 391. As noted above, the indemnity clause provides that Gibraltar would defend and hold GM harmless against any and all liabilities

resulting from injury to any person arising out of any acts or omissions of Gibraltar. These allegations of vicarious liability based on Gibraltar's negligence fall within the terms of the indemnity clause, and therefore triggered American Ecology's duty to defend GM under the Agreement.

American Ecology, however, contends that some claims asserted against GM in *Adams* were for direct negligence or concurrent negligence, and that under the Agreement it simply is not obligated to defend or indemnify claims arising out of any "negligent acts or omissions of GM." Contrary to American Ecology's assertion, the allegations in the Third Amended Petition do not state claims under a theory of concurrent negligence. Concurrent negligence results where the acts of two independent parties have concurred to produce the injuries for which they are responsible. *Robert R. Walker, Inc. v. Burgdorf*, 244 S.W.2d 506, 509 (Tex. 1952). Based on the facts alleged in the Third Amended Petition, the *Adams*' plaintiffs were, in addition to alleging any direct acts of negligence, alleging that GM was vicariously liable for American Ecology's acts or omissions. In any event, the court has already construed the Agreement as not covering GM's direct acts of negligence, and concurrent negligence is not an issue, as GM does not contend that it was owed a defense and indemnity based on its concurrent negligence.

There is no dispute that American Ecology did not provide GM with a defense. Because Gibraltar failed to perform its obligation to defend GM as required under the Agreement, it breached the contract. There is no genuine issue of material fact on this issue, and GM is entitled to judgment as a matter of law on its claim for breach of contract based on American Ecology's failure to defend it in the *Adams* litigation.

**Memorandum Opinion and Order - Page 14**

GM contends that it has incurred damages as a result of American Ecology's failure to defend it in the *Adams* litigation. Specifically, GM contends that it incurred the following damages: $1.5 million (the settlement amount paid in *Adams*), and $505,800.45 in attorneys' fees and expenses, including guardian *ad litem* fees, expert witness fees, joint counsel fees and fees incurred in connection with a separate declaratory judgment action brought against it by Zurich American Insurance Company ("Zurich").[8]  In addition, GM seeks to recover costs incurred as a result of bringing the instant lawsuit to recover for each of American Ecology's alleged breaches, including its attorneys' fees.

In Texas, if a liability insurer wrongfully refuses to defend a suit filed against its insured, and the insured compromises and settles the cause of action asserted therein without the sanction of a judgment, then the insured may, in a separate suit instituted against the insurer for that purpose, recover judgment for the total expenses of [its] defense and settlement of the former suit, and, may also recover the amount of damages [it] paid or promised to pay in settlement of the cause of action in the former suit upon sufficient proof of facts establishing that the settlement was made in good faith, upon a reasonable basis and for a reasonable amount. *Texas United Ins. Co. v. Burt Ford Enterprises, Inc.*, 703 S.W.2d 828, 835 (Tex.App.--Tyler 1986, no writ). GM argues that where an indemnitor denies a defense, and the indemnitee settles the case, the indemnitor waives its right to

---

[8]In June 1999, GM requested that Zurich defend it in the *Adams* litigation based on its understanding that it was an additional insured under certain insurance policies issued to American Ecology by Zurich. On December 10, 1999, Zurich brought suit against GM for declaratory relief, contending, *inter alia*, that GM was not an additional insured under those policies, and therefore not entitled to coverage. GM asserts that it was ultimately not afforded coverage under American Ecology's insurance policy, GM's Br. in Supp. of Mot. for Summ. J. at 6-7, that it incurred costs and expenses in having to defend the declaratory judgment action, and that it is entitled to recover those costs and expenses based on American Ecology's alleged failure to name it as an additional insured.

**Memorandum Opinion and Order - Page 15**

challenge the reasonableness of the settlement. American Ecology does not address this argument.

Since American Ecology has failed to respond to this issue or present any evidence, the court is

permitted to accept GM's evidence that the settlement was made in good faith upon a reasonable

basis and for a reasonable amount as undisputed. *See Tutton v. Garland Indep. Sch. Dist.,* 733

F.Supp. 1113, 1117 (N.D. Tex. 1990). Moreover, American Ecology's failure to respond to this

argument means that it has not designated specific facts showing that there is a genuine issue for

trial. Because American Ecology has failed to adduce evidence that would permit a reasonable juror

to conclude that the settlement was unreasonable, or made in bad faith on an unreasonable basis, the

court finds that GM's settlement of the *Adams* litigation was reasonable as a matter of law.

The court, however, cannot conclude that GM is entitled to recover the entire amount of

settlement as a matter of law. Under Michigan law, "[a] contract of indemnity should be construed

so as to cover all losses, damages, or liabilities to which it reasonably appears to have been the

intention of the parties that it should apply, but not to extend to losses, damages, or liabilities which

are neither expressly within its terms nor of such character that it can reasonably by inferred that they

were intended to be within the contract." *Roehm*, 184 N.W. at 416. The summary judgment

evidence establishes that GM settled all claims asserted against it in the *Adams* case, including

claims for vicarious liability. Because GM's settlement encompassed both claims covered under the

Agreement (vicarious liability), as well as claims not covered under the Agreement (direct

negligence), fact issues exist regarding which part of the settlement was for claims asserted against

GM for its own negligence and which part of the settlement was for claims asserting vicarious

liability. Because there are genuine issues of material fact regarding allocation of the settlement

**Memorandum Opinion and Order - Page 16**

amount, GM has failed to establish as a matter of law that it is entitled to recover the entire $1.5 million incurred in settling the *Adams* case.

With respect to GM's alleged costs and expenses incurred in defending *Adams*, American Ecology contends that GM should not be allowed to recover pre-tender defense costs.  It also contends that because GM has failed to distinguish and segregate costs incurred before it requested a defense in *Adams* and costs incurred thereafter, it has failed to establish a right to summary judgment for any portion of its costs.  GM responds that the court may award its attorney's fees incurred after its tender as a matter of law, as this amount is easily segregated by reference to the record in this case.  The court agrees.

As previously stated, the duty to defend arises when a suit is brought against the insured with allegations that potentially obligate the insurer to indemnify.  In this case, the Third Amended Petition is the operative pleading, as it is the only one that asserts allegations which potentially engages American Ecology's duty to indemnify.  The record does not indicate the date on which the Third Amended Petition was filed; however, the Certificate of Service attached thereto indicates that it was served on all parties to the litigation on or about June 18, 1999.  The court therefore finds that GM would be entitled to recover defense costs incurred in the *Adams* litigation after June 18, 1999.  The court, however, is unable to conclude that GM would be entitled to recover all costs incurred after this date as a matter of law.

While GM has presented evidence of fees and expenses incurred after June 18, 1999, it has also submitted evidence which indicates fees and expenses were incurred in connection with the *Adams* litigation after July 28, 1999, the date on which it settled the *Adams* lawsuit. The record does not clearly establish for what these additional fees and expenses were incurred, and does not

**Memorandum Opinion and Order - Page 17**

establish whether the fees incurred after July 28, 1999 are recoverable as defense costs. The court therefore concludes that general issues of material fact exists as to whether GM is entitled to recover the entire amount of damages alleged its Complaint. Thus, to the extent GM's summary judgment motion seeks relief for the entire amount of damages alleged in its Complaint, the motion is denied.

With respect to GM's claim for attorney's fees incurred in the instant case, the court typically resolves this issue posttrial by motion under Fed. R. Civ. P. 56(d). Therefore, the court declines to determine this issue at this stage of the litigation.

### b.    The Duty to Indemnify

The court next consider's GM's contention that American Ecology breached the Agreement by failing to indemnify it for costs and expenses incurred in connection with the *Adams* litigation. The court concludes that because American Ecology had a duty to defend GM against vicarious liability claims, it also had a duty to indemnify GM for the costs and expenses incurred in settling those claims.

American Ecology contends that by settling all possible claims, including claims against it for punitive damages and gross negligence, the indemnity provision is rendered unenforceable. American Ecology, however, cites no authority and points to no provision in the contract to support this contention. In any event, settlement of GM's negligence claims is irrelevant, as the court has already determined that such claims are not covered under the Agreement.

American Ecology next contends that because GM waited more than two years before requesting a defense in *Adams*, it has waived its right to recover any portion of the settlement paid in that litigation. Again, American Ecology cites no authority to support its contention. Moreover, the court in its research has found no case in which a Michigan court has held that a delay in

**Memorandum Opinion and Order - Page 18**

notifying an indemnitor of a claim potentially covered under an indemnity contract results in a waiver of an indemnitee's rights under the contract, or estops the indemnitee from pursuing its rights under the contract. While *insurance contracts* typically include provisions requiring an insured to give the insurer immediate or prompt notice of an accident or suit, *see Wendel v. Swanberg*, 185 N.W.2d 348, 352 (Mich. 1971), the Agreement in this case does not contain a notice provision or otherwise specify that an indemnitee must notify the indemnitor of a claim potentially covered by the Agreement.[9] The court also doubts the viability of American Ecology's argument because the rationale for including a notice provision in an insurance contract does not apply in this case. Generally, an insured is required to provide its insurer prompt notice of an accident or suit so that the insurer can make a timely investigation of the accident, evaluate claims, and defend against fraudulent, invalid, or excessive claims. *Id.* Because these interests may be compromised by an insurer's untimely notice, an insurer may be excused from its obligation to indemnify where the insurer is prejudiced by an insured's unreasonable delay. *See id.* at 353. Here, American Ecology, as one of several defendants in the underlying litigation, had knowledge and information of the claims being asserted against GM. Moreover, American Ecology has not demonstrated that it was

---

[9]American Ecology contends that GM had an implied duty to "tender its defense" within a reasonable period of time, and cites *Koch Indus., Inc. v. Sun Co., Inc.*, 918 F.2d 1203, 1204 (5th Cir. 1990), in support of its position. American Ecology's reliance on *Koch*, however, is misplaced, as the case is inapposite, and the contract at issue was construed according to Texas law, rather than Michigan law. In addition, the defendant in that case expressly agreed to transfer funds to a special pension plan. Knowing that the defendant would not be able to transfer the funds immediately, the parties did not specify a date by which the defendant was to perform its obligation. The court noted that although the parties did not specify a precise date for the transfer of funds, the defendant could not have taken forever to satisfy its obligation to transfer the money. In dicta, the court, citing Texas law, stated that if a contract does not set a time for performance, the law will imply a duty to perform within a reasonable time. *Koch*, 918 F.2d 1209 n.3. In this case, the Agreement does not impose an obligation on GM to formally request a defense. Because GM had no contractual obligation to formally request a defense, American Ecology's argument that it failed to do so within a reasonable period of time necessarily fails.

Memorandum Opinion and Order - Page 19

prejudiced by GM's delay in notifying it of claims under the Agreement.  American Ecology's argument is therefore unavailing.

The court finds that American Ecology had a duty to indemnify GM for costs incurred in connection with the *Adams* litigation, and that American Ecology has not indemnified GM for those costs and expenses.  The court further finds that American Ecology, by failing to indemnify GM for these costs and expenses has breached the Agreement.  Because there is no genuine issue of material fact as to whether American Ecology breached the Agreement based on its duty to indemnify, GM is entitled to judgment as a matter of law.

The amount to be indemnified, however, necessarily depends on a determination of GM's damages.  As discussed above, there are genuine issues of material fact as to the amount of damages that GM should be allowed to recover as a result of American Ecology's breach of the Agreement.  The court is therefore unable to conclude as a matter of law that GM is entitled to indemnity for the entire amount of damages alleged in its Complaint.  Thus, to the extent GM's summary judgment motion seeks indemnity for the entire amount of damages alleged in its Complaint, the motion is denied.

### c.    The Obligation to Name GM as an Additional Insured

GM contends that American Ecology breached the Agreement by failing to name it as an additional insured on certain insurance policies, specifically, American Ecology's Pollution Legal Liability policy.  To prevail on its breach of contract claim, GM must establish that 1) a binding contract existed; 2) American Ecology breached the contract; and 3) it suffered damages caused by American Ecology's alleged breach.  *See East Tex. Med. Ctr. Cancer Inst. v. Anderson*, 991 S.W.2d 55, 62 (Tex. App.--Tyler 1998, pet. denied); *Ryan v. Superior Oil Co.*, 813 S.W.2d 594, 596 (Tex.

App.--Houston [14th Dist.] 1991, writ denied).  The court need only address the second element, as it is the only one in dispute.

The insurance provision of the Agreement provides:

10.1    Prior to the commencement of Facility's Services hereunder, and during the term of this Agreement, Contractor *shall*:

     a.     *Obtain and maintain all insurance required herein*; and
     b.     Furnish certificates of insurance (Exhibit H) to GM and GM Business Units issuing purchase orders evidencing:

| Coverage | Limits |
|---|---|
| Comprehensive General Liability including Broad Form Contractual Liability coverage | $5,000,000 per occurrence combined single limit for Personal Injury and Property Damage |
| Automobile Liability covering all owned, hired and non-owned vehicles | $5,000,000 per occurrence combined single limit for Personal Injury and Property Damage |
| - Environmental Restoration | Statutory for transportation of Byproducts |
| Pollution Legal Liability | |
| -   Including coverage for both Sudden and Accidental and Non-Sudden Pollution Occurrence | $4,000,000 per occurrence combined single limit for Personal Injury and Property Damage with $8,000,000 annual aggregate |

Such above-mentioned contracts of insurance shall name GM as an "additional insured" to the extent of the liability assumed by [Gibraltar] under this Agreement and shall be primary in coverage regardless of other insurance as may be available to GM.  If, at the time this Agreement is entered, [Gibraltar] is unable to have GM named as an "additional insured" to the Pollution Legal

**Memorandum Opinion and Order - Page 21**

Liability policy, [Gibraltar] agrees to have GM so named as soon as such treatment becomes possible.

American Ecology contends that GM is not entitled to judgment as a matter of law based on a breach of the insurance provision for two reasons. First, it contends that it did not breach the insurance provision because it did not assume liability for the defense and settlement costs at issue in this case. Second, it contends that it is excused from having to obtain coverage under the Agreement based on its inability to have GM named as an additional insured. The court is unpersuaded.

As previously noted, the court has concluded that the parties intended that claims for vicarious liability be included within the coverage of the Agreement. Because such claims are within the terms of the Agreement, they fall within the liability assumed by American Ecology under the Agreement. American Ecology's argument that it did not intend to assume liability for GM's gross negligence and punitive damages is irrelevant, because liability for these damages would be excluded under the Agreement, and therefore not intended to be covered in the first instance. In any event, GM is not seeking to recover based on such damages. Therefore, Plaintiff's first argument is unavailing.

Regarding the second argument, American Ecology contends that it was unable to have GM named as an additional insured because of its insurer's refusal to add GM to the policy. As such, American Ecology contends that it is excused from performance under the Agreement, and directs the court to the Affidavit of Toni Graham, Risk Manager for AEC. In her affidavit, Ms. Graham states

2.    In my tenure as Risk Manager, AEC submitted its customers to be named as additional insureds to Zurich's environmental impairment liability policies of

**Memorandum Opinion and Order - Page 22**

insurance (also known as pollution legal liability insurance as described in the General Motors Contract).  Zurich would not allow clients of AEC or its subsidiaries to be added as additional insureds under Zurich's Environmental Impairment Policies.

4.   On June 12, 1997, I received a letter from our insurance brokers, Johnson & Higgins in response to an inquiry I made that confirmed that Zurich would not add clients as additional insureds on their Environmental Impairment policies because it would broaden the coverage of the policy to an unacceptable degree.

Affidavit of Toni Graham at 1-2, attached to American Ecology's Br. in Supp. of Joint Resp. to

GM's Mot. for Summ. J. and the Defs.' Counter-Mot. for Summ. J.   American Ecology further

contends that Gibraltar merely agreed to "have GM named as an additional insured *if* Gibraltar's

insurer allowed the practice."  American Ecology contends that because its insurer would not agree

to add Gibraltar's customers to its environmental coverage, the Agreement expressly excused

Gibraltar from obtaining coverage.  American Ecology woefully misreads the contract.

As quoted above, the Agreement states that  "if, *at the time this Agreement is entered*,

[Gibraltar] is unable to have GM named as an 'additional insured' to the Pollution Legal Liability

policy, [Gibraltar] agrees to have GM so named as soon as such treatment becomes possible."

Section 10.1 of the Agreement.  The reasonable interpretation of this sentence is that American

Ecology would have additional time to provide the requisite insurance coverage, if it were unable

to have GM named as an additional insured to the policy at the time the parties entered the

Agreement.  Nowhere in this provision does it state that Gibraltar would be excused from its

obligation to provide the requisite insurance if it is unable to have GM named as an additional

insured because its *chosen* insurance company (Zurich) *does not allow the practice*.[10]  American

---

[10]The court notes that in September 1995, Zurich issued American Ecology an Environmental Impairment Liability policy naming GM as an additional insured.  *See* App. to GM's Mot. for Summ. J. at

Ecology's argument is further undermined by the express language of the Agreement. The only provision that would relieve American Ecology of its obligations to name GM as an additional insured appears in Section 10.3. That section provides:

> In the event [Gibraltar] is not required by law to obtain or maintain contracts of insurance in the above amounts or is by law permitted to self-insure for any of the coverages herein stated, or such coverages become commercially unavailable, [Gibraltar] may be relieved of the above obligations upon thirty (30) days' written notice to GM of revised insurance coverages or limits, or its elections to self-insure. In the event [Gibraltar] revises coverages or limits or determines to self-insure hereunder, GM may elect to terminate this Agreement. GM shall make such election to [Gibraltar] within thirty (30) days of receipt of [Gibraltar's] notice (emphasis added).

American Ecology has wholly failed to establish that it qualifies for relief under this section. American Ecology has failed to present evidence establishing a genuine issue of material fact that it had no obligation to obtain pollution liability coverage under the Agreement, or that its obligation was excused.

The summary judgment evidence establishes that under the Agreement, American Ecology had an obligation to obtain and maintain certain insurance thereunder, including Pollution Legal Liability coverage; that American Ecology was required to name GM as an additional insured under its pollution legal liability policy to the extent of the liability assumed by it under the Agreement; that at the time GM requested American Ecology to defend it in *Adams*, American Ecology was an insured under Zurich Policy No. PLC 68-20-850-02, and that GM was not named as an additional insured under that policy. Based on this evidence, the court finds that American Ecology failed to

---

98. Thus, at some time during the life of the Agreement, Zurich did provide environmental liability coverage for additional insureds. In any event, American Ecology had an obligation under the Agreement to obtain Pollution Legal Liability coverage, and to have GM named as an additional insured to the policy. That American Ecology's selected insurance company refused to add GM as an additional insured does not relieve American Ecology of its obligation under the Agreement.

name GM as an additional insured under its pollution legal liability coverage, and therefore breached its obligations under the Agreement. American Ecology has failed to establish a genuine issue of material fact as to whether it breached the Agreement based on its failure to name GM as an additional insured, and GM is entitled to judgment as a matter of law.

GM asserts that it has incurred damages resulting from American Ecology's breach of the insurance provision, including fees and expenses associated with defending the declaratory judgment action brought against it by Zurich. According to GM, it incurred "$505,800.45 in attorneys' fees and expenses, including guardian ad litem fees, expert witness fees, joint counsel fees and *fees incurred in the Zurich litigation*" (emphasis added). GM's Mot. for Summ. J. at 7. Zurich did not file suit against GM until December 1999, and the court is unable to ascertain which portion of the stated amount is attributable to "fees incurred in the *Zurich* litigation." The court is therefore unable at this time to award damages based on this breach, or render judgment as to this claim.

### III.  Miscellaneous

Also before the court are American Ecology's Objections to GM's Summary Judgment Evidence, filed November 20, 2000. GM has also lodged objections to evidence submitted by American Ecology in support of its counter-motion for summary judgment. The court has only considered summary judgment evidence which meets the appropriate legal standard under Fed.R.Civ.P. 56. Statements or "evidence" which merely express subjective beliefs, conjectures, opinions, conclusions, arguments, or assumptions without an evidentiary basis have been totally disregarded by the court. Likewise, inadmissible hearsay and irrelevant evidence were not considered by the court. Finally, any evidence which has not been properly authenticated or verified as required was excluded from consideration. In sum, the court disregarded "evidence" submitted

by any party which was not competent summary judgment evidence. Accordingly, the objections lodged by all parties are **overruled as moot**.

Finally, the court did not address certain arguments or issues raised by the parties. If an argument or issue was not addressed by the court, the court did not believe the matter to be necessary in ruling on the motions for summary judgment.

### IV.   Conclusion

#### A.   Dismissed Claims

As set forth above, GM has abandoned its claim for common law contribution, and its claim for common law indemnity is subsumed in its claim for breach of contract. GM's claims for common law contribution and common law indemnity are therefore **denied as moot**, and hereby **dismissed with prejudice**.

#### B.   Issues Remaining for Trial

For the reasons previously stated, there are no genuine issues of material fact as to American Ecology's liability for its breach of the Agreement. GM is therefore entitled to judgment as a matter of law on its claim for breach of contract based on American Ecology's failure to defend and indemnify it (GM) in the *Adams* litigation, and its failure to name GM as an additional insured on its pollution legal liability insurance policy. Accordingly, GM's Motion for Summary Judgment is **granted** as to liability. Although the court grants GM's motion as to liability, there are, however, genuine issues of material fact with respect to the amount of damages to be allocated or apportioned for American Ecology's breach of the Agreement. Specifically, the court cannot determine how much of the settlement was for claims against GM for vicarious liability, for claims against GM for its direct negligence in the *Adams* litigation, for defense costs and expenses incurred by GM as a

**Memorandum Opinion and Order - Page 26**

result of defending indemnifiable claims in the *Adams* litigation, and for costs and expenses incurred by GM in defending the *Zurich* litigation.  Accordingly, GM's Motion for Summary Judgment is **denied** as to damages.  Therefore, the only issues left for trial are allocation of the settlement amount for indemnifiable claims and determination of GM's defense costs and expenses.  Since the court has ruled in favor of GM on its breach of contract claim, American Ecology's Counter-Motion for Summary Judgment is **denied**.

### C.   Trial Schedule

The court has determined that it will be unable to reach this case for trial in August.  Therefore, the court **vacates** the current trial setting, and hereby resets this case on its four-week docket beginning **October 1, 2001**.  A pretrial conference is scheduled in this case for **September 28, 2001** at **2:00 p.m.**  The court will provide the parties with a more precise date regarding the trial of this action at the pretrial conference.

The court notes that the parties have already submitted their pretrial materials and proposed pretrial order in this case; however, in light of the court's ruling herein, the parties should be in a position to pare down their witness and exhibit lists.  The court therefore instructs the parties to submit amended witness and exhibit lists, a revised pretrial order, and revised jury instructions by **September 14, 2001**.

**It is so ordered** this _30th_ day of August, 2001.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 27**

ORIGINAL

**RAMEY &FLOCK**

A PROFESSIONAL CORPORATION

ATTORNEYS AND COUNSELLORS AT LAW

POST OFFICE BOX 629
TYLER, TEXAS 75710

R. BRIAN CRAFT

500 FIRST PLACE
TYLER, TEXAS 75702

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

AUG 3 0 2001

CLERK, U.S. DISTRICT ...
By _____
Deputy

AREA CODE 903
TELEPHONE 597-3301
TELECOPIER 597-2413

July 19, 2001

Honorable Sam A. Lindsay
U.S. District Court for the Northern District of Texas
Earle Cabell Federal Bldg., Room 13B31
1100 Commerce St.
Dallas, TX 75242-1003

> RE:   Civil Action No. 3-99CV2625-L; *General Motors Corporation v. American Ecology Environmental Services Corp. f/k/a Gibraltar Chemical Resources, Inc. and American Ecology Corp.*

Dear Judge Lindsay:

On June 25, 2001, a Joint Motion to Reconsider Plaintiff's Motion to Determine Applicable Law was filed. The parties have since conferred and are in agreement that Corporate Purchase Agreement No. 3837 entered into between General Motors Corporation and Gibraltar Chemical Resources, Inc. on September 20, 1989 is to be construed according to the laws of the State of Michigan. It is the belief of the parties that all other issues should be determined according to the laws of the State of Texas, the forum state.

Sincerely,

R. BRIAN CRAFT

RBC/tlh
# 116791.1

cc:   Kirk F. Sniff
      Karen Brown Willcutts
      Ashley T. Kisner
      STRASBURGER & PRICE, L.L.P.
      901 Main St., Ste. 4300
      Dallas, TX 75202

E-Mail: BCraft@Ramey-Flock.com ✧ Direct Line: (903) 510-5221