**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**
DEC 6 2001
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | | |
|---|---|---|
| GENERAL MOTORS CORPORATION | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | 99CV2625-L |
| AMERICAN ECOLOGY | § | |
| ENVIRONMENTAL SERVICES CORP. | § | |
| f/k/a GIBRALTAR CHEMICAL | § | |
| RESOURCES, INC., AMERICAN | § | |
| ECOLOGY CORP., and MOBLEY | § | |
| ENVIRONMENTAL SERVICES, INC. | § | |
| | § | |
| Defendants. | § | |

## BRIEF IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT OF GENERAL MOTORS CORPORATION

_____
**KIRK F. SNIFF**
State Bar No. 18797800
**KAREN BROWN WILLCUTTS**
State Bar No. 03149750
**ASHLEY T. KISNER**
State Bar No. 00791783
**STRASBURGER & PRICE, L.L.P.**
901 Main Street, Suite 4300
Dallas, Texas 75202
(214) 651-4300
(214) 651-4330 (Telecopier)

ATTORNEYS FOR PLAINTIFF
GENERAL MOTORS CORPORATION

## CERTIFICATE OF SERVICE

    A true and correct copy of the above and foregoing document has been served on the following counsel, in accordance with the Federal Rules of Civil Procedure, on this 25th day of November, 2001.



KIRK F. SNIFF

**BRIEF IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**
717046.1/SP2/36122/0586/11272001

**BRIEF IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

**COMES NOW**, General Motors Corporation ("GM") and files its Brief in Support of Supplemental Motion for Summary Judgment and offers this brief for the Court's consideration.

## SUMMARY

GM's breach of contract claim is based on a services agreement (the "Agreement") under which American Ecology Environmental Services Corporation ("AEESC") f/k/a Gibraltar Chemical Resources, Inc. ("Gibraltar") and American Ecology Corporation ("AEC") ("Defendants") were required to, among other things, name GM as an additional insured on certain insurance policies. During the course of its defense and indemnification demands to Defendants regarding an underlying lawsuit, *Adams v. American Ecology Envtl. Servs. Corp.*, Cause No. 236-165224-96, in Tarrant County, Texas, (the *"Adams* Litigation"), GM learned that Defendants had failed to name GM as an additional insured on the relevant insurance policies, as required under the terms of the Agreement. As a result, GM was denied the benefit of defense and indemnification coverage for the *Adams* Litigation under the insurance policies held by Defendants. Later, GM was sued by Zurich American Insurance Company ("Zurich") in Index No. 604662-99 in the Supreme Court, County of New York, State of New York (the *"Zurich* Litigation") for a declaration that GM was not an additional insured under AEC's claims-made environmental impairment liability policy for the 1996-1997 policy year (the "Policy") and therefore was not entitled to coverage. Accordingly, GM filed this lawsuit to recover damages for Defendants' breach of contract.

GM previously moved for for summary judgment on its claims against Defendants. The Court held that GM was entitled to judgment as a matter of law on numerous issues, including Defendants' failure to name GM as an additional insured. GM recently learned that AEC resolved its coverage lawsuit with Zurich, such that Zurich paid for all of AEC's defense and settlement costs in the *Adams* Litigation. If Defendants had named GM as an additional insured on the Policy, then GM also would

**BRIEF IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT - Page 1**
717046.1/SP2/36122/0586/11282001

have recovered its defense and settlement costs and would not have been sued in the *Zurich* Litigation. Therefore, GM is entitled to recover such expenses from Defendants as a matter of law.

## PROCEDURAL BACKGROUND

1. GM filed its Complaint and Demand for Jury Trial in this case on November 18, 1999, asserting four causes of action against Defendants, including breach of contract.

2. On October 19, 2000, GM filed its Motion for Summary Judgment on its causes of action against Defendants.

3. On August 30, 2001, the Court issued its Memorandum Opinion and Order (hereafter "Memo. Op."), holding that GM is entitled to judgment as a matter of law regarding Defendants' failure to list GM as an additional insured under its insurance policies.

4. This case is set for trial during the week of December 17, 2001.

## UNDISPUTED FACTS

1. In September 1989, GM and Gibraltar entered into the Agreement, under which Gibraltar agreed to transport and dispose of hazardous and non-hazardous waste and by-products for GM. Memo. Op. at 3.

2. In the Agreement, Gibraltar agreed to add GM as an additional insured on Gibraltar's pollution legal liability insurance policies. Memo. Op. at 3.

3. In September 1995, AEC informed GM that it had purchased 100% of Gibraltar's stock and assumed all of Gibraltar's liabilities and contractual obligations. Memo. Op. at 3, n. 4.

4. Zurich issued the Policy to AEC, which covered the time period in which the *Adams* Litigation was filed. App. at 229-254.

5. Defendants failed to list GM as an additional insured on the Policy. *See* Memo. Op. at 24-25.

6. On August 30, 1996, GM was joined in the *Adams* Litigation. *See* Memo. Op. at 4. The plaintiffs in the *Adams* Litigation (the "*Adams* Plaintiffs") accused Defendants of various acts

and omissions in connection with the handling and disposal of wastes at the Facility, which allegedly resulted in personal injuries and property damage to the *Adams* Plaintiffs. *See id.*

7. The *Adams* Plaintiffs also alleged that GM was vicariously and directly liable for Defendants' actions. *See* Memo. Op. at 4.

8. On May 3, 1999, GM sent Defendants a claim notice detailing its entitlement to defense and indemnity in the *Adams* Litigation under the Agreement. *See* Memo. Op. at 4.

9. On June 29, 1999, Defendants denied GM's request for defense and indemnity. Memo. Op. at 4.

10. On July 28, 1999, GM settled the *Adams* Litigation for $1.5 million. Memo. Op. at 5.

11. In September 2000, Zurich settled the *Adams* Litigation on behalf of AEC, pursuant to the Policy. App. at 90. However, Zurich claimed it paid the settlement under a reservation of rights. *Id.*

12. Zurich also paid a portion of AEC's attorneys' fees in the *Adams* Litigation pursuant to the Policy. *See* App. p. 71.

13. On October 12, 1999, Zurich filed the *Zurich* Litigation, seeking reimbursement from AEC for the settlement amount in the *Adams* Litigation and defense costs in the *Adams* Litigation, this lawsuit, and a related lawsuit. *See* App. p. 1-37.

14. In December 1999, GM was joined in the *Zurich* Litigation. Memo. Op. at 25. GM incurred fees and expenses as a result of being sued by Zurich, and ultimately, GM was not afforded coverage under the Policy for its costs and expenses arising out of the *Adams* Litigation. *Id.*

15. GM incurred the following damages as a result of Defendants' failure to list GM as an additional insured: (a) $1.5 million in settlement costs in the *Adams* Litigation; (b) $470,189.71 in attorneys' fees and expenses in the *Adams* Litigation, including guardian ad

litem fees, expert witness fees, and joint counsel fees; and (c) $17,361.05 in attorneys' fees and expenses incurred in the *Zurich* Litigation. *See* App. at 105.

16. On August 30, 2001, this Court issued its Memorandum Opinion and Order, holding that AEC failed to name GM as an additional insured under the Policy and that GM is entitled to judgment as a matter of law on this issue. *See* Memo. Op. at 24-25.

17. On September 28, 2001, Zurich and AEC settled the *Zurich* Litigation, such that Zurich paid AEC for substantially all of the costs AEC incurred in the *Adams* Litigation (the "*Zurich* Settlement"). *See* App. p. 99 and 105.

18. On November 8, 2001, GM first learned of the *Zurich* Settlement. *See* App. p. 105.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the summary judgment record demonstrates that no genuine issue of material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to establish with significant probative evidence that a material issue of fact exists. *See Kansas Reinsurance Co. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1371 (5th Cir. 1994). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The nonmovant may not rest upon the pleadings but must identify specific facts to establish a genuine issue exists for trial. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In this Supplemental Motion, GM seeks summary judgment on the amount of damages to which it is entitled as a result of Defendants' breach of the Agreement by failing to name GM as an additional insured under their insurance policies. As the evidence and case law show, GM is entitled

BRIEF IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT - Page 4
717046.1/SP2/36122/0586/11282001

to recover $1,987,550.76 from Defendants: $1.5 million in settlement costs in the *Adams* Litigation; $470,189.71 in attorneys' fees and expenses incurred in the *Adams* Litigation, including guardian ad litem fees, expert witness fees, and joint counsel fees; and $17,361.05 in attorneys' fees and expenses incurred in the *Zurich* Litigation.

## ARGUMENTS AND AUTHORITIES

GM is entitled to summary judgment on its damages claim for Defendants' failure to list GM as an additional insured on their insurance policies. This Court determined in its August 30, 2001, Memorandum Order and Opinion that Defendants breached their obligation to obtain and maintain certain insurance under the Agreement, including Pollution Legal Liability insurance. *See* Memo. Op. at 24-25. If Defendants had named GM as an additional insured under the relevant policies, then GM also would have been entitled to recover its settlement and defense costs in the *Adams* Litigation and would not have been sued in the *Zurich* Litigation.

Since at least 1992, Gibraltar and, subsequently, AEC enjoyed an uninterrupted history of pollution liability insurance coverage with at least two insurance carriers. If Defendants had complied with their contractual obligations under the Agreement, then GM would have been afforded full coverage for the claims made in both the *Adams* Litigation and the *Zurich* Litigation. Specifically, the coverage afforded under pollution liability insurance policies to Defendants would have provided GM with insurance coverage not only for allegations of vicarious liability but also for allegations of its own direct negligence. Accordingly, Defendants' breach of their contractual obligation permits GM's recovery of *all* of its settlement in the *Adams* Litigation, attorneys' fees and costs in the *Adams* Litigation, and attorneys' fees and costs in the *Zurich* Litigation.

A. **The Policy Does Not Distinguish Between Claims of Vicarious and Direct Liability.**

    1. **Gibraltar's Pollution Coverage**

Beginning on December 1, 1992, National Union Fire Insurance Company issued pollution legal liability insurance coverage to Gibraltar, with limits of liability of $4,000,000 each loss and $8,000,000 all losses ("the 1992 National Union pollution policy"). *See* App. p. 106-137. This coverage was renewed in 1993 with increased limits of liability of $5,000,000 each loss and $10,000,000 all losses ("the 1993 National Union pollution policy"). *See* App. p. 138-179.

Both the 1992 and 1993 National Union pollution policies contain endorsements adding other entities as insureds to the policies. The 1992 National Union pollution policy contains three endorsements adding entities as insureds. For example, in adding The Boeing Company to the coverage of the 1992 National Union pollution policy, Endorsement No. 16 reads:

> In consideration of the premium paid, it is hereby understood and agreed that the following entity(ies) is (are) included as Additional Insured(s), but solely as respects liability arising out of the Named Insured's ownership, operation, maintenance or use of the locations covered under this policy.
>
> ADDITIONAL INSUREDS
>
> THE BOEING COMPANY

*See* App. p. 133. The other two endorsements, Endorsement Nos. 1 and 18, to the 1992 National Union pollution policy used virtually identical language to add five more entities and persons to the policy's coverage. *See* App. p. 113 and 135.

The 1993 National Union pollution policy contained similar endorsements adding six persons and corporate entities as insureds. *See* App. p. 161-62. Again, Boeing, but not GM, was added as an additional insured to the 1993 National Union pollution policy. *See* App. p. 162.

2. **AEC's Pollution Coverage**

After AEC bought Gibraltar, GM expected to be added as an additional insured to AEC's environmental liability policies. In 1994, Zurich issued a claims-made environmental impairment liability policy to AEC with limits of liability of $10,000,000 each loss and $10,000,000 all losses

("the 1994 Zurich EIL policy"). *See* App. p. 180-205. The 1994 Zurich EIL policy contains the following Endorsement No. 2 adding various parties as named insureds:

> It is hereby understood and agreed that the following entity(ies) is (are) included as Named Insured(s) but solely as respects liability arising out of the ownership, operations, maintenance or use of the locations in the Declarations. The Named Insured, if any, previously designated in Declarations shall remain unchanged as such.

*See* App. p. 199. The endorsement then clearly adds eleven different entities to the policy as additional insureds. *See id.*

The 1994 Zurich EIL policy was renewed for the 1995-1996 policy year ("the 1995 Zurich EIL policy"). App. at 206-228. The 1995 Zurich EIL policy also contains Endorsement No. 2 adding 19 parties as named insureds. App. at 209. The 1995 Zurich EIL policy was renewed for the 1996-1997 policy year ("the 1996 Zurich EIL policy"), which is the policy triggered by the *Adams* Litigation. App. at 229-254. The 1996 Zurich EIL policy, likewise, contained an endorsement adding various parties as named insureds to the coverage. App. at 238. Each of the endorsements issued by Zurich contained language virtually identical to that found in the National Union policies giving the additional insureds coverage for "liability arising out of ownership, operation, maintenance or use of the locations in the Declarations." App. at 199; 209; 238.

### 3. The 1996 Zurich EIL Policy Provided Coverage For "Liability," Not Just Direct or Vicarious Negligence

None of these additional insured endorsements to the policies, and specifically the 1996 Zurich EIL policy, distinguish between claims of direct or vicarious liability.[1] Such distinction regarding the

---

[1] Under both Michigan and Texas law, an insured may validly provide coverage for another party's own negligence by adding that party to his policy via endorsement. *See Sentry Ins. Co. v. National Steel Corp.*, 147 Mich. App. 214, 382 N.W.2d 753 (1985) ("There is no question that National Steel could have directly contracted with Sentry to obtain liability coverage for National's own negligence. Such a policy certainly would not be against public policy as the very purpose of insurance is to provide coverage to a policyholder for the policyholder's negligent actions."); *Urrutia v. Decker*, 992 S.W.2d 440, 443 (Tex. 1999) (*citing* 21 DORSANEO, TEXAS LITIGATION GUIDE §§ 341.07[2][h] at 341-57 (July 1998), *citing Forest Oil Corp. v. Strata Energy, Inc.*, 929 F.2d 1039, 1044-45 (5th Cir. 1991)) (insurer may agree to add as an

type of liability only relates to *Defendants'* duty to *indemnify* GM under that provision of the Agreement. Whether GM's liability in the *Adams* Litigation was premised on direct or vicarious negligence did not affect the *insurance coverage* GM would have received had it been properly added to the 1996 Zurich EIL policy.[2] As such, all of the environmental impairment policies, and the 1996 Zurich EIL policy in particular, clearly would have covered *all* of GM's settlement and defense costs in the *Adams* Litigation, regardless of whether such expenses were incurred on direct or vicarious liability claims.

B.   **General Motors is Entitled to Full Damages as a Result of AEC's Breach of Contract.**

Adding GM to the Policy by this type of endorsement would have entitled GM to the same benefits and standing under the policy that Defendants had with respect to the *Adams* Litigation. *See Highland Park Shopping Village v. Trinity Universal Ins. Co.*, 36 S.W.3d 916, 918 (Tex. App. – Dallas 2001, no writ) (noting that additional insured endorsement provided additional insured with the "same coverage" as the named insured where endorsement provided coverage "with respect to liability arising out of 'your work' for that insured or for you"). But for the Defendants' failure to name GM as an additional insured on the policies, and in particular AEC's failure to name GM as an additional insured on the

---

additional insured "any person or organization to which the named insured is obligated by virtue of a written contract to provide insurance").

[2] A contractual provision requiring a party to provide insurance constitutes an obligation separate from merely providing coverage for indemnification. *See Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 805 (Tex. 1992) (holding that clause, which provided that "All insurance coverage carried by Seller . . . shall extend to and protect Purchaser," supported the additional insured requirement, not the indemnity agreement, was a separate obligation and, therefore, was not prohibited by the Anti-Indemnity Statute); *accord Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 129 (Tex. App.—Houston [14th Dist.] 2000, writ denied) (language, "such insurance shall include coverage for liability arising out of loading and unloading and shall fully extend to, defend and protect CROWN," expressed parties' intent that additional insured provision was not intended merely to assure performance of indemnity provision, but instead, was an obligation independent of and in addition to indemnity provision).

Policy, GM would have been entitled to full coverage for its settlement and defense costs in the *Adams* Litigation.

Under Texas law, GM is entitled to recover the full measure of its damages as a result of Defendants' breach:

> Crown, however, argues that but for Coastal's breach of §§ 5 of the Agreement to provide Crown insurance, Crown would have received a defense against Coastal's claims by virtue of the insurance Coastal was to have provided to Crown. We agree. The reasonable attorney's fees and expenses, which Crown expended in defending Coastal's claims, constitute damages resulting from Coastal's breach of the insurance provision of the Agreement. Therefore, the trial court did not err in awarding Crown the costs of defending Coastal's claims as damages for breach of the insurance provision.

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 130 (Tex. App. – Houston [14th Dist.] 2000, writ denied).

Similarly, if Defendants had properly named GM as an additional insured on the Policy, then GM would have been afforded coverage for the *Adams* Litigation, as was AEC. Zurich judicially admitted in the *Zurich* Litigation that it covered AEC for the $3,000,000 settlement negotiated with the *Adams* Plaintiffs on behalf of AEC. App. at 90. If Defendants had complied with their contractual obligation to name General Motors as an additional insured on the environmental policies, then GM never would have had to fund its own settlement or pay its own defense costs in the *Adams* Litigation. Furthermore, GM would not have been sued in the *Zurich* Litigation.

Because Zurich paid substantially all of AEC's defense and settlement costs in the *Adams* Litigation, GM also would have recovered all of its settlement and defense costs in the *Adams* Litigation if Defendants had named it as an additional insured under the Policy. *See Coastal*, 20 S.W.2d at 130. Also, Zurich would not have sued GM regarding whether it was listed as an additional insured on the Policy. Therefore, as a matter of law, GM is entitled to recover all of its

defense and settlement costs in the *Adams* Litigation and all of its defense costs in the *Zurich* Litigation from Defendants.

## CONCLUSION

In its Memorandum Opinion and Order of August 30, 2001, the Court held that Defendants failed to name GM as an additional insured during the policy year in which the *Adams* Litigation was actually filed and therefore GM was entitled to judgment as a matter of law on this issue. Memo. Op. at 24-25. Had Defendants honored this contractual obligation, GM would not have had to pay for defense costs or settlement expenditures in the *Adams* Litigation, as it would have been entitled to a defense and indemnity under the Policy, as was afforded the Defendants by Zurich. Thus, as a direct result of Defendants' failure to name GM as an additional insured on their insurance policies as required by the Agreement, GM incurred damages. This plain breach of the Agreement entitles GM to judgment as a matter of law as to damages in the *Adams* Litigation. Furthermore, Defendants' breach made it impossible for GM to prevail on a claim directly against Zurich for coverage for losses associated with the *Adams* Litigation. Therefore, Defendants are liable for GM's costs in the *Zurich* Litigation. As such, GM also is entitled to judgment as a matter of law as to damages in the *Zurich* Litigation. Therefore, GM is entitled to summary judgment for $1,987,550.76: $1.5 million in settlement in the *Adams* Litigation; $470,189.71 in fees and expenses from the *Adams* Litigation; and $17,361.05 in fees and expenses from the *Zurich* Litigation.